IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOSEPH WAYNE BONDS, | § | |
|     Petitioner | § | |
| | § | |
| VS. | § | C.A. NO. C-08-60 |
| | § | |
| NATHANIEL QUARTERMAN, | § | |
| Director, Texas Department of Criminal | § | |
| Justice–Correctional Institutions Division, | § | |
|     Respondent | § | |

**MEMORANDUM AND RECOMMENDATION**

Petitioner is an inmate in the Texas Department of Criminal Justice - Correctional Institutions Division, ("TDCJ-CID"), currently incarcerated at the McConnell Unit in Beeville, Texas, and the actions about which he complains occurred there. Proceeding *pro se*, petitioner filed an original habeas corpus petition pursuant to 28 U.S.C. §§ 2254 and 2241 on January 4, 2008 (D.E. 1)[1]. In petitioner's original petition he made the following due process claims in reference to a disciplinary hearing which resulted in the imposition of punishment: (1) He is actually innocent of the charges; (2) His counsel substitute was ineffective for failing to present a self-defense issue and for not calling requested witnesses; (3) His due process rights were violated when he was not allowed to call witnesses and (4) He was not allowed to present evidence showing that he was acting out of fear for his life. Respondent filed an answer on June 13, 2008 in which he seeks dismissal of petitioner's

---

[1] Petitioner declared under penalty of perjury that he placed his petition in the prison mail system on January 4, 2008 and it is considered filed as of that date. Spotville v. Cain, 149 F.3d 374, 376 (5th Cir. 1998). It is unclear why the petition was not file-stamped by the clerk's office until February 22, 2008, but the timeliness of the petition is not an issue in this case.

application for relief (D.E. 10). Petitioner responded to the motion to dismiss on June 20, 2008 (D.E. 12). Respondent filed a supplemental answer on July 25, 2008 in which he seeks to dismiss petitioner's cause of action as moot because he has been released to mandatory supervision (D.E. 15). Petitioner filed no response to the supplemental answer.

## JURISDICTION

Jurisdiction and venue are proper in this court because petitioner is incarcerated in the Corpus Christi Division of the Southern District of Texas. 28 U.S.C. 2241(d); Wadsworth v. Johnson, 235 F.3d 959 (5th Cir. 2000).

## BACKGROUND

Prior to his release to mandatory supervision on July 14, 2008, petitioner was serving a five-year sentence for kidnapping (D.E. 1, p. 2; D.E. 10, Ex. A; D.E. 14, Ex. A). He does not complain about his holding conviction, but challenges the results of a disciplinary hearing. In disciplinary case number 20070249371 petitioner was accused and found guilty of refusing to obey an order to accept and move into a new cell, stating that the did not like the cell block or the offenders who lived on it (Disp. Hrg. Rec., D.E. 11, p. 2).

In the offense report, the charging officer, F. Guevara, wrote that on May 7, 2007 petitioner was ordered to accept and move into a new cell but failed to obey the order.[2] During the investigation of the disciplinary charge, petitioner stated that he did not want to live in 8 Building (Disp. Hrg. Rec., D.E. 11, pp. 7-8). At the hearing petitioner stated that he

---

[2]In his complaint, petitioner said that he went to his cell when corrections officers threatened to "spray" him (D.E. 1, p. 7).

2

did not say what Guevara said he did, but that Guevara did not give him a chance to say anything at all.  Petitioner said he filed an "OPI"[3] on May 2, 2007 and that he cannot go back to 8 Building.  An officer from the classification division testified that petitioner's complaint regarding housing was denied on May 4, 2007 because of no evidence (Disp. Hrg. Rec., D.E. 11, pp. 3-4).

Petitioner was found guilty because he pleaded guilty and also based on the charging officer's report.  He was punished with the loss of 30 days of recreation time and 30 days of commissary privileges.  In addition he had to stay in Line Class 3 and lost 30 days of good time (Disp. Hrg. Rec., D.E. 11, p. 2).

Petitioner states that he filed a Step 1 grievance six days after he was found guilty but was never given an appeal number and never received a response to the Step 1.  He claims that he filed a Step 2 grievance, but it was not processed and was not returned to him because prison authorities said he did not file a Step 1 (D.E. 1, pp. 5-6).  Respondent submitted an affidavit from the TDCJ-CID administrator of offender grievances stating that there were no records on file relating to the disciplinary case that petitioner is challenging herein (Disp. Grv. Rec., D.E. 11, p. 1).

In the original answer, respondent argues that petitioner is not entitled to relief because he did not exhaust his administrative remedies and because he was afforded due process in the disciplinary proceedings.  Petitioner counters that he tried to exhaust his

---

[3]There is no explanation in the record for what "OPI" means, but apparently it has to do with petitioner complaining about his housing assignment because he feared that he would be stabbed in his cell.

administrative remedies but was kept from doing so by the McConnell Unit grievance office. He also argues that he pleaded not guilty to the charges and that he was afraid for his life because his cell mate had been stabbed. In addition he claims that he did not receive a copy of the decision in his disciplinary case.

## APPLICABLE LAW

**A. Mootness**

If a dispute ends or has otherwise been resolved, it becomes moot. American Medical Ass'n v. Bowen, 857 F.2d 267, 270-271 (5th Cir. 1988). A case may become moot when an intervening factual event causes the petitioner to no longer have a present right, stake or interest in the outcome. Dailey v. Vought Aircraft, Co., 141 F.3d 224, 227 (5th Cir. 1998). If a controversy is moot, the trial court lacks subject matter jurisdiction. See North Carolina v. Rice, 494 U.S. 244, 246, 92 S.Ct. 402, 404 (1971). "To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision. Lewis v. Continental Bank Corp., 494 U.S. 472, 477, 110 S.Ct. 1249, 1253, 108 L.Ed.2d 400 (1990).

Petitioner sought reinstatement of good time credits he lost as the result of a disciplinary hearing. He has since been released on mandatory supervision (D.E. 14, Ex. A). If he were to return to TDCJ-CID, he would lose his accumulated good time. Tex. Gov't Code Ann. § 498.004(b). Accordingly, a decision in his favor would not redress any injury suffered by him. Because he no longer has a present stake or interest in the outcome

of this case, it should be dismissed as moot. In the alternative, if the district court does not dismiss petitioner's claims as moot, they should be denied on the merits.

**B. Exhaustion of Administrative Remedies**

Before a federal court can grant an application for writ of habeas corpus, an applicant must have exhausted the remedies available in the courts of the state. 28 U.S.C. § 2254(b)(1). "To exhaust available state remedies, a habeas petitioner must fairly apprise the highest court of his state of the federal rights which were allegedly violated." Shute v. State of Texas, 117 F.3d 233, 237 (5th Cir. 1997)(internal quotations omitted). But, because Texas state courts do not review claims of lost good time or other results of prison disciplinary proceedings, a petitioner is required to pursue his claims through the administrative appeals process rather than state court. Ex Parte Palomo, 759 S.W.2d 671, 674 (Tex. Crim.App. 1988); Ex parte Brager, 704 S.W.2d 46 (Tex. Crim. App. 1985). The exhaustion requirement is mandatory and the administrative grievance procedure must be completed before a prisoner can file a law suit in federal court. Underwood v. Wilson, 151 F.3d 292 (5th Cir. 1998). Notwithstanding a petitioner's failure to exhaust state remedies, an application for a writ of habeas corpus may be denied on the merits. 28 U.S.C. § 2254(b)(2).

Petitioner declared under penalty of perjury that he attempted to exhaust his administrative remedies by filing a Step 1 grievance on May 15, 2007 but that no action was ever taken on it. He claims that he then attempted to file a Step 2 grievance but that prison officials wouldn't process it without the Step 1 grievance. Respondent submitted an affidavit from Sandra K. Murphy, the administrator of offender grievances, stating that there

was no record of petitioner having filed any grievances in relation to the disciplinary case which is the subject of this habeas corpus cause of action.  Nor was there any record of any unprocessed grievances in petitioner's file, although such records were kept regularly as of May 1, 2007 (Disp. Grv. Rec., D.E. 11, p. 1).

Because of the parties' differing claims regarding petitioner's attempts to exhaust his administrative remedies, a fact issue exists which precludes entering summary judgment on the exhaustion issue.  Accordingly, it is recommended that petitioner's cause of action not be dismissed for failure to exhaust administrative remedies.

**C.  Due Process Rights**

In order to be granted a writ of habeas corpus, a petitioner must show that he is in custody in violation of the Constitution, laws or treaties of the United States.  In Sandin v. Conner, 515 U.S. 472, 483-484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995), the U.S. Supreme Court described the limited instances in which prison inmates can make out a claim that a liberty interest has been taken without due process.

> The time has come to return to the due process principles we believe were correctly established and applied in [Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963 (1974)] and [Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532 (1976)].  Following Wolff, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause.  But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Id.  (internal citations omitted).  The Supreme Court held in Sandin that confinement in disciplinary segregation for twenty-three hours and ten minutes per day "did not present the

type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Sandin, 515 U.S. at 486, 115 S.Ct. at 2301. The Court focused on the nature of the liberty interest at issue, finding that conditions of disciplinary segregation did not differ significantly from conditions in administrative segregation and protective custody. Id.

### 1. Line Class Status

In this case, petitioner is complaining about being forced to stay at Line Class 3 and also about the loss of 30 days of good time. To the extent he is complaining that having to stay at Line Class 3 will affect his parole eligibility, he fails to state a basis of relief. Generally a lower classification of line class limits an inmate's ability to earn good time credits, which could have an effect on the amount of time he is in custody. Even so, "such speculative, collateral consequences do not create constitutionally protected liberty interests." Luken v. Scott, 71 F.3d 192 (5th Cir. 1995)(citing Meachum v. Fano, 427 U.S. 215, 229, n. 8, 96 S.Ct. 2532, 2540, n. 8, 49 L.Ed.2d 451 (1976)), cert. denied sub nom. Luken v. Johnson, 116 S.Ct. 1690 (1996). "'Prisoners have no protectable property or liberty interest in custodial classifications.'" Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999)(citing Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998)). See also Malchi v. Thaler, 211 F.3d 959 (5th Cir. 2000)(holding that timing of inmate's release is too speculative to afford him a constitutionally cognizable claim to the right to a particular time-earning status, which right the Texas legislature has specifically denied creating). Petitioner has not suffered the loss of a liberty interest by being forced to remain in Line Class 3.

### 2. Loss of Good Time

The loss of good time by a prisoner as the result of a disciplinary hearing generally is treated as a loss of a liberty interest and the Supreme Court described the process due a prisoner accused of a disciplinary infraction in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974): (1) He must receive written notice of the charges; (2) He must be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals and (3) There must be a written statement by the fact finder as to the evidence relied on and reasons for the decision. Wolff, 418 U.S. at 564, 94 S.Ct. at 2979. Petitioner in this case received written notice of the charges. He claims that he was denied the right to call witnesses who would have testified that his cell mate was stabbed and that he was in danger of being hurt. A review of the hearing tape and the written record reveals that the only witness requested by petitioner was a member of the prison classification department who testified by telephone that petitioner had complained that he was in danger, but that no evidence was found to support his assertion (Disp. Hrg. Tape and Disp. Hrg. Rec., D.E. 11, pp. 3-4). Petitioner does not identify any other witnesses he wished to call and does not describe what their testimony would have been. Petitioner was able to testify that his cell mate was stabbed and that he thought he was in danger if he went back to his cell. He also filed a complaint regarding his personal safety that was reviewed by prison officials. Under these circumstances, petitioner cannot show that even if he were denied the right to call witnesses that it caused him prejudice at the hearing.

8

Regarding the preparation of a written statement by the fact finder, the hearing officer did complete such a statement (Disp. Hrg. Rec., D.E. 11, pp. 2-4). Petitioner stated that no paperwork was ever given to him to keep after the hearing. The record shows that petitioner was in restraints at the time of the hearing (Disp. Hrg. Rec., D.E. 11, p. 2).

Respondent submitted an affidavit from Arturo Falcon, a correctional officer supervisor at TDCJ-CID, who stated that according to the hearing record, he was the hearing officer at petitioner's disciplinary hearing, although he did not recall the specific hearing. He stated that when an inmate was in restraints it was his practice to give the inmate's copy of the hearing document to the correctional officer who escorted him to and from the hearing and to tell the officer to place the document in the inmate's hands and if he refused, to leave it in the inmate's cell (Answer, D.E. 10, Ex. B).

Respondent also included an affidavit from Helen Rider, who served as petitioner's counsel substitute during the hearing. Rider stated that if an inmate told her that he did not receive a copy of a hearing report and it was substantiated, she would provide one free of charge. If an inmate lost his copy of a report, she would tell him to fill out an open records request form to obtain the document for a nominal fee. She added that a copy of the hearing report is kept in the inmate's file and he would be able to obtain a copy of it through one of the two methods described (Answer, D.E. 10, Ex. C).

Petitioner has not described any effort he made to obtain a copy of the disciplinary report and has not shown that he was prejudiced in any way by not having a copy of the

9

report. Without more, he cannot show that his rights in the disciplinary hearing were violated under the Wolff standard.

### 3. Ineffective Assistance of Counsel Substitute

Petitioner argues that he did not receive effective assistance from his counsel substitute at the disciplinary hearing because she did not present evidence that he initially refused the housing assignment because he thought his life was in danger. Respondent counters that there is no constitutional right to counsel in a prison disciplinary case. Inmates "do not 'have a right to either retained or appointed counsel in disciplinary hearings.'" Baxter v. Palmigiano, 96 S.Ct. 1551, 1556, 425 U.S. 308, 315, 47 L.Ed.2d 810 (1976)(quoting Wolff, 418 U.S. at 570, 94 S.Ct. at 2981). If a petitioner does not have a right to counsel at a disciplinary hearing, he does not have a right to effective counsel. Accordingly, petitioner has failed to state a cause of action based on the fact that he was not provided representation at the disciplinary hearing.

### 4. Actual Innocence

Petitioner argues that he was actually innocent of the charges because he thought his life would be in danger if he returned to his cell and also because he did return to his cell when he was told that he would be "sprayed" if he did not. As long as a hearing officer's decision is supported by some evidence and the requirements of Wolff have been met, the decision cannot be disturbed on judicial review. "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent Mass. Corr. Institution v. Hill, 472 U.S. 445, 455-456, 105 S.Ct.

2768, 2774, 86 L.Ed.2d 356 (1985); Banuelos v. McFarland, 41 F.3d 232, 234 (5th Cir. 1995).  In this case petitioner pleaded guilty to the charges (Disp. Hrg. Tape and Disp. Hrg. Rec., D.E. 11, p. 2) although he explained that because his cell mate had been stabbed he felt like his life would be in danger if he returned to his cell.  His guilty plea, along with the evidence from the charging officer, was "some evidence" that supported the hearing officer's decision.

Based on the foregoing, it is recommended that petitioner's cause of action be dismissed because he has failed to describe the violation of a constitutional right.  Judgment should be entered for respondent.

### D. Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although petitioner has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed.  See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under §

2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. Slack v. Daniel, 529 U.S. 473, 484, 120 S.Ct. 1604, 146 L.Ed.2d 542 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327, 123 S.Ct. at 1034.

A slightly different standard applies when the claims are dismissed on procedural grounds. In that instance, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 120 S.Ct. at 1604, 529 U.S. at 484 (emphasis added).

In petitioner's case, it is recommended that his cause of action be dismissed as moot and also on the merits. If the district court orders that petitioner's cause of action be dismissed and petitioner seeks a COA in order to proceed with his case, it is further recommended that the COA be denied because he has not made the necessary showing for issuance of a COA.

## RECOMMENDATION

Based on the foregoing, it is recommended that respondent's motion to dismiss, contained in his answer and his supplemental answer (D.E. 10, 14), be granted in part and denied in part. Petitioner's cause of action should be dismissed as moot. In the event the district court does not dismiss the petition as moot, it should not be dismissed for failure to exhaust because there is a fact issue regarding whether he attempted to exhaust but was not allowed to do so. Notwithstanding the foregoing, it is further recommended that petitioner's cause of action be dismissed on the merits for failure to state a claim and because he received due process. In the event petitioner seeks a Certificate of Appealability, it is recommended that it be denied.

Respectfully submitted this 20th day of August, 2008.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C) and Article IV, General Order No. 80-5, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).